IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KANDY TEDDER, )
 )
       Plaintiff, )
 )
v. ) 1:16CV1123
 )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
 )
       Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kandy Tedder ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 1, 2012, alleging a disability onset date of May 31, 2012. (Tr. at 12, 144-47.)[2] Her claim was denied initially (Tr. at 69-79, 92-95), and that determination was upheld on reconsideration (Tr. at 80-91, 97-100).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #7].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 101-02.) Plaintiff attended the subsequent hearing on September 15, 2014, along with her attorney and an impartial vocational expert. At the hearing, she amended her alleged onset date to February 1, 2013. (Tr. at 12, 57.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 21.) On July 14, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 1, 2013, her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: osteoarthritis of the right knee and chronic heart disease. (Tr. at 14.) The ALJ found at step three that neither of these impairments met or equaled a disability listing. (Tr. at 15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with a further limitation to walking for a maximum of 4 hours per day, with "the option to alternate sitting

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

for 5 minutes after standing for 60 minutes." (Tr. at 15.) The ALJ also limited Plaintiff to occasional balancing, stopping, kneeling, crouching, and climbing of ramps and stairs, and precluded her from climbing ladders or scaffolds and exposure to hazardous conditions. (Id.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff could perform her past relevant work. (Tr. at 20-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that "[t]he ALJ improperly assessed the supportability of Plaintiff's alleged limitations in walking when formulating the RFC." (Pl.'s Br. [Doc. #10] at 4.) Second, she argues that "[t]he ALJ erred by failing to adequately evaluate Plaintiff's knee degeneration under Disability Listing 1.02A." (Id. at 13.) The Court will consider these contentions in turn.

A.   Challenge to RFC Determination

Plaintiff first challenges the RFC determination, and complains that "without adequate explanation, the ALJ found that she could be on her feet for 60 minutes at a time before having to take a break and could walk for 4 hours total in an 8 hour workday." (Pl. Br. at 7.) Plaintiff contends that as a result of her right knee pain, she could not walk more than 20-30 feet at a time and could not stand or walk for more than 30 minutes a day. Plaintiff asserts that the ALJ "never explained why Ms. Tedder was able to walk for longer periods of time than she alleged herself capable." (Pl. Br. at 7).

However, in his decision, the ALJ pointed to multiple bases for reaching his conclusions. Most significantly, the ALJ gave significant weight to the consultative physical examination, which took place on October 17, 2012. The evaluator, Dr. Peter Morris, noted

6

that Plaintiff was able to walk to the examination room without assistance, was able to get on and off the table without assistance, and was capable of taking on and off shoes without assistance. She had normal muscle bulk and tone and her lower extremity strength was 5/5. Dr. Morris noted that Plaintiff had a "slightly slow and antalgic gait," moderate difficulty with heel, toe, and tandem walking, decreased range of motion in her right knee, and difficulty with squatting and kneeling. (Tr. at 17-18, 680-82.) Dr. Morris further noted than an assistive device was not medically necessary. (Tr. at 682.) As part of the consultative examination, Dr. Morris considered evidence including x-rays of Plaintiff's knee from January 2011 and an MRI from March 2011. Ultimately, Dr. Morris opined that Plaintiff could perform light work with further postural limitations and up to 4 hours of walking / 6 hours of standing per 8-hour workday. (Tr. at 682.) The ALJ found that this opinion was consistent with treatment notes from Plaintiff's primary care physician, cardiologist, and orthopedist, and gave the opinion significant weight. (Tr. at 19.) The ALJ also specifically considered the 2011 x-rays and MRI, and a more recent x-ray from October 2012, as well as the related treatment records. (Tr. 16-17.)[5] In addition, the ALJ considered the opinions of the non-examining state agency physicians, Dr. Sandhu and Dr. Cox, who issued their opinions on November 2, 2012 and January 18, 2013, respectively, and posited that Plaintiff could perform light work with postural restrictions. (Tr. at 19-20, 75-76, 87-88.) Dr. Sandhu found that Plaintiff had the ability to stand or walk for 6 hours in an 8-hour day, while Dr. Cox found that she had the ability to stand or walk for 4 hours in an 8-hour day. The ALJ assigned significant weight to

---

[5] The October 2012 x-ray findings noted "No acute fracture. No subluxation. Joint space narrowing and hypertrophic change felt to be degenerative. Small knee effusion. Potential loose bodies posteriorly within the joint space." (Tr. at 674.)

7

these opinions and assessed Plaintiff's RFC accordingly, with a limit of 4 hours of walking per 8-hour day and an additional "option to alternate sitting for 5 minutes after standing for 60 minutes." (Tr. at 15, 19-20.) Plaintiff did not present any contrary opinions or restrictions from her treating physicians. Indeed, as noted by the ALJ, Plaintiff's treating physicians recommended that she exercise, including walking 3 to 4 times per week as she was able, and also recommended exercises to strengthen her leg muscles and physical therapy that Plaintiff failed to complete. (Tr. at 17, 19.) Plaintiff subsequently lost her health insurance but did return to see her primary care doctor in August 2013, a few months after the amended alleged onset date. At that visit, Plaintiff sought treatment and renewal of her prescriptions for her coronary artery disease and hypertension, and also noted her left foot pain, but did not include any complaint regarding her right knee pain. She was again encouraged to walk at least 3 to 4 times per week as she was able, with no finding of a restriction in her ability to walk. (Tr. at 18, 727.)

Reviewing the ALJ's decision as a whole, it is apparent that the ALJ considered and discussed the record evidence at length, including the medical evidence, the opinion evidence, and Plaintiff's submissions and testimony, and specifically considered Plaintiff's functional ability to walk and stand as a result of her right knee pain. The ALJ ultimately reached an RFC determination even more restrictive than that found by the consultative examiner and the state agency physicians. No greater restrictions were recommended or found by any treating physician. The ALJ explained the basis for his conclusions and his reasons for not crediting Plaintiff's contentions that she suffered from greater limitations. To the extent that Plaintiff disagrees with that determination and cites to other parts of the treatment record, this Court

does not reweigh the evidence to determine whether substantial evidence would support a finding of disability. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted); see also Edge v. Astrue, 627 F. Supp. 2d 609, 612 (E.D.N.C. 2008) ("[A]n [ALJ] has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence."). Here, the ALJ considered all of the evidence and made findings and determinations as noted above. Based on those findings, the ALJ determined Plaintiff's RFC. That determination is supported by evidence that is "substantial" under the standards set out in Hunter, 993 F.2d at 34, and Mastro, 270 F.3d at 176. Accordingly, the Court finds no error in the ALJ's RFC determination.

    B.    Challenge to Listing Analysis

Plaintiff next contends that the ALJ erred in concluding that Plaintiff failed to satisfy the requirements of Listing 1.02 (Major Dysfunction of a Joint). At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix 1 of the regulations. The listings define impairments which are so severe that they would "prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532 (1990). For a claimant to demonstrate that he qualifies for a listing, and therefore is entitled to a conclusive presumption of disabled status, he must meet all of the medical criteria specified for that listing. Id. at 532. An impairment that meets only some of the listing criteria, no matter how severe, will not qualify. Id.

Notably, at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). However, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Id.

With respect to Listing 1.02, an impairment of the lower extremities is analyzed under Listing 1.02(A), which requires a claimant to show dysfunction of a major, weight-bearing joint such as the knee, characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the joint, with medical imaging showing joint space narrowing, bony destruction, or ankylosis, and "resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.02(A). Section 1.00B2b(1) defines the inability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. <u>Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities</u>.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(1) (emphasis added). Section 1.00B2b(2) then goes on to provide "examples of ineffective ambulation," which

> include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(2).

In this case, the ALJ considered Listing 1.02(A), but concluded that Plaintiff failed to meet Listing 1.02 "because there is no evidence the claimant's impairment has resulted in an inability to ambulate effectively or an inability to perform fine and gross movements effectively. Additionally, no treating or examining physician has suggested that any of the claimant's alleged impairments either meet or medically equal any of the medical listings." (Tr. at 15.) Plaintiff contends that there was evidence in the record of her inability to ambulate effectively based on her complaints to her doctors that she could only walk 20-30 feet before having to stop and rest and based on the fact that she chose to rent a wheelchair for an outing to a festival and to visit her mother in the hospital. However, the ALJ considered this evidence, but also noted that Plaintiff "has a brace and a cane at home, but she does not want to use the cane unless she has to." (Tr. at 16.) Moreover, as noted above, the ALJ gave significant weight to Dr. Morris' opinion. In his consultative evaluation, Dr. Morris noted that no assistive device was medically necessary. In addition, none of Plaintiff's treating physicians had prescribed or recommended use of a wheelchair or assistive device, and the ALJ considered at length Plaintiff's ability to walk as part of the RFC determination, as set out

above. Thus, the ALJ provided sufficient explanation for the Listing determination, and substantial evidence supports the determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 11th day of July, 2017.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge